UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - :
GREGORY ROBERTS,                          : 03 Civ. 476 (DAB)(JCF)
                                          :
                Petitioner,               :
                                          :        REPORT AND
      - against -                         :        RECOMMENDATION
                                          :
                                          :
T. POOLE, Superintendent,                 :
                                          :
                                          :
                                          :
                Respondent.               :
- - - - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

Gregory Roberts brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for criminal sale of a controlled substance. Mr. Roberts argues that: (1) he received ineffective assistance of counsel because his trial attorney failed to seek a juror's dismissal upon learning that the juror gave false information about her employment by the Federal Bureau of Investigation (the "F.B.I.") during voir dire; (2) the prosecution failed to prove his guilt beyond a reasonable doubt, thereby violating his right to due process; (3) the trial judge violated his right to a fair trial by responding to a request from the jury without first informing his counsel of the request; (4) the indictment did not sufficiently notify the petitioner of the charges against him; and (5) the trial court improperly declined to hold a full evidentiary hearing to ascertain the admissibility of identification testimony. Because all of the petitioner's claims

1

are procedurally defaulted and he has failed to show cause for the default, I recommend that the petition be denied.

Factual Background

On July 16, 1997, in the vicinity of 121st Street and Lexington Avenue in Manhattan, the petitioner sold two vials of crack cocaine to an undercover police officer, Detective Nege Williams. (Tr. at 53-56).[1] Another detective, Franklin Cosom, witnessed the exchange and radioed his field team with the details of the transaction. (Tr. at 149-53). Detective Williams also notified the field team, confirming that there had been a "positive buy" and providing a description of the petitioner. (H. Tr. at 10, 17).[2]

Soon after, one of the field team members, Detective Joseph Rosario, apprehended the petitioner in a nearby alley. (Tr. at 208-10). Detective Williams drove by and confirmed that Mr. Roberts was the man who had sold her crack. (Tr. at 212; H. Tr. at 13). Detective Rosario then placed the petitioner under arrest. (Tr. at 212).

On August 12, 1997, the petitioner was indicted on one count of Criminal Sale of a Controlled Substance in the Third Degree in violation of New York Penal Law § 220.39. Mr. Roberts subsequently moved to suppress certain identification testimony. (H. Tr. at 31).

---

[1] "Tr" refers to the trial transcript.

[2] "H. Tr." refers to the transcript of the pretrial hearing held on March 25, 1998.

Supreme Court Justice John A.K. Bradley conducted a limited <u>Wade</u>
hearing on March 25, 1998.[3]  The assistant district attorney called
only one witness, Detective Rosario.  The detective testified that
he had received a description of Mr. Roberts via radio from
Detective Williams and that he had located and apprehended the
petitioner based on that description. (Tr. at 10).  He also
testified that Detective Williams had performed a driveby
identification immediately prior to the petitioner's arrest.  (H.
Tr. at 13).  Justice Bradley denied the suppression motion orally,
finding that Detective Rosario's testimony was credible and that
the identification was confirmatory.  (H. Tr. at 32-34).

Trial was held before Justice Bradley in New York State Supreme
Court, New York County, beginning on March 31, 1998.  During trial,
Dolores Soriano, a chemist with the New York City Police Department,
testified about the contents of the vials purchased by Detective
Williams from the petitioner.  The parties stipulated that Ms. Soriano
was an expert in the area of chemical analysis, and defense counsel
did not cross-examine her.  (Tr. at 129-30).  Ms. Soriano explained

---

[3] A <u>Wade</u> hearing is a proceeding held pursuant to <u>United
States v. Wade</u>, 388 U.S. 218 (1967) to determine the admissibility
of identification testimony.  The <u>Wade</u> hearing here was "limited"
because Justice Bradley only addressed the question of whether the
challenged identification testimony was confirmatory.  At a full
<u>Wade</u> hearing the judge would have considered the suggestiveness and
reliability of the contested testimony.  <u>See</u> <u>Hodge v. Henderson</u>,
761 F. Supp 993, 1007 & n.9 (S.D.N.Y. 1990).  Under New York Law,
a confirmatory identification by an undercover police officer who
observed the petitioner face-to-face during a drug transaction
obviates the need for a "full" <u>Wade</u> hearing.  <u>See</u> <u>People v.
Wharton</u>, 74 N.Y.2d 921, 922-23, 550 N.Y.S.2d 260, 261 (1989).

that she had performed a number of tests on the substance in the vials and that based on those tests she had concluded that the substance in each vial was cocaine. (Tr. At 134-37). Detective Williams also testified at trial. In describing the drug transaction, she recalled that the caps on the vials sold to her by the petitioner were orange. (Tr. at 98). During her grand jury testimony, she had initially testified that the caps were black, though she later corrected herself. Defense counsel cross-examined Detective Williams extensively regarding this discrepancy. (Tr. at 99-101, 126).

On the second day of trial, one of the jurors, Diana Rivera, asked to be excused from jury duty because she was needed at the F.B.I. where she worked as a clerk. (Tr. at 254-55). After Justice Bradley questioned Ms. Rivera about her responsibilities at the F.B.I. and elicited her assurance that she would decide the case fairly, defense counsel began his summation. (Tr. at 255-56). Defense counsel did not object to Ms. Rivera's continuing to serve on the jury, despite the fact that during voir dire she had stated that she was a transportation assistant and had responded "no" to questions from the judge as to whether she was involved in law enforcement or knew anyone who was. (V.D. Tr. at 15-17, 95-96, 86).[4]

The trial concluded and the jury began deliberations on April 1, 1998. During deliberations, the jurors sent the judge two notes. In the first, they asked that they be provided with certain evidence,

_____

[4] "V.D. Tr." refers to the transcript of the voir dire.

that the jury charge be repeated, and that excerpts of testimony by Detective Williams and Detective Cosom be read back to them. (Tr. at 327). While the court was in the process of complying with these requests, and prior to Mr. Roberts and his counsel being made aware of them, the jurors sent a second note stating that they no longer wanted to hear the testimony of Detective Williams and Detective Cosom. (Tr. at 328-29). The judge read both notes on the record in the presence of the defendant and his counsel. (Tr. at 327-28). Before that, however, the court provided the jurors with the evidence they had requested. (Tr. at 328).

At the conclusion of trial, the jury returned a verdict of guilty. (Tr. at 333-34). The petitioner was subsequently sentenced as a second felony offender to a term of seven to fourteen years. (S. Tr. at 7).[5] Mr. Roberts appealed his conviction and sentence to the Appellate Division, First Department arguing that: (1) the trial court violated his right to a public trial by closing the courtroom during Detective Williams' testimony; and (2) his sentence was excessive and should be reduced. (Brief for Defendant on Direct Appeal ("Def. App. Br."), attached as Exh. B to the Declaration of Darian B. Taylor dated June 11, 2003 ("Taylor Decl.")). On February 13, 2001, Mr. Roberts also moved to file a supplemental pro se brief. He sought to allege violations of his rights under the Sixth Amendment and the due process clause of the Fourteenth Amendment. He did not, however, provide any

_____

[5] "S. Tr." refers to the transcript of the sentencing proceeding.

factual or legal support for the proposed claims. (Affidavit of Gregory Roberts dated February 13, 2001, attached as part of Exh. C to Taylor Decl.). On March 20, 2001, the Appellate Division denied the motion without explanation. (Order dated March 20, 2001, attached as part of Exh. C to Taylor Decl.). On June 19, 2001, that court affirmed the petitioner's conviction but reduced his sentence. People v. Roberts, 284 A.D.2d 212, 728 N.Y.S.2d 437 (1st Dep't 2001). The Court of Appeals denied leave to appeal on December 18, 2001. People v. Roberts, 97 N.Y.2d 687, 738 N.Y.S.2d 303 (2001).

In the meantime, Mr. Roberts filed a motion on October 31, 2000, seeking to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 (the "440 motion"). As grounds for his 440 motion, the petitioner asserted that he had received ineffective assistance of trial counsel because his trial attorney failed to object to: (1) Ms. Rivera's continuing to serve as a juror after he learned that she had misrepresented the nature of her job; and (2) the admission into evidence of the two vials of cocaine in light of inconsistencies between Detective Williams' grand jury and trial testimony. (Affidavit of Gregory Roberts in Support of Motion to Vacate Judgment Pursuant to § 440.10, attached as Exh. L to Taylor Decl., at 4, 8). Justice Bradley denied the motion on May 22, 2001 (Order dated May 22, 2001, attached as Exh. N to Taylor Decl.), and the Appellate Division denied leave to appeal on October 25, 2001. (Taylor Decl., Exh. R).

In addition, Mr. Roberts petitioned the Appellate Division for a writ of error coram nobis on September 10, 2001. (Writ of Error Coram Nobis ("Coram Nobis"), attached as Exh. I to Taylor Decl.). In that petition, he alleged that the assistance provided by his appellate counsel was ineffective based on counsel's failure to raise each of the claims now asserted in his habeas corpus petition. The Appellate Division denied the application on June 20, 2002, citing People v. Bienvenido de la Hoz, 131 A.D.2d 154, 158, 520 N.Y.S.2d 386, 388 (1987), which holds that the burden of rebutting the presumption that counsel has been effective lies with person challenging counsel's effectiveness. (Taylor Decl., Exh. K). The petitioner then filed the instant petition.

Discussion[6]

---

[6] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A decision is contrary to clearly established Federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. [Williams v. Taylor, 529 U.S. 362, 405-06 (2000).] An unreasonable application of federal law is more than an incorrect application, but the petitioner

A.  Procedural Default

The respondent argues that all of the petitioner's claims are barred, in one way or another, by the doctrine of procedural default. (Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 19-21, 32-33).

Federal review of a habeas claim is barred if the judgment is based on adequate and independent state grounds, including a state procedural bar, unless the petitioner demonstrates cause for his default and prejudice or a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 729 746-51 (1991).  Federal

> need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Id. at 409-12.  Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness.  Id. at 409.  Objective unreasonableness includes an unreasonable refusal "to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d 36, 45 & n.2 (2d Cir. 2002).  The "increment of incorrectness beyond error . . . need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)(internal quotation marks omitted).

Yung v. Walker, 296 F.3d 129, 135 (2d Cir. 2002).

> The AEDPA standard applies to this case since Mr. Roberts filed his petition after the Act's effective date.  See Brown, 283 F.3d at 498 n.2.  Nevertheless, since each of the petitioner's claims fails under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis.  See Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106-07 & n.3 (2d Cir. 2003) (often appropriate to decide first whether state court determination was erroneous and then, if so, whether it was nevertheless reasonable).

jurisdiction is not precluded, however, merely because the petitioner failed to follow state procedural law. Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). "The state court must have actually relied on the bar as an independent basis for its relief." Id. Federal review of a habeas claim will be allowed unless the "last court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations and citations omitted).

The petitioner argues first that he was denied effective assistance of trial counsel when counsel failed to challenge juror Diana Rivera. As a preliminary matter, the New York State Supreme Court was the last state court to rule explicitly on the claim. Although Mr. Roberts appealed Justice Bradley's denial of his 440 motion in which the claim was first raised, the Appellate Division denied leave to appeal, and there is no appeal to the Court of Appeals from an order of the Appellate Division denying leave to appeal a § 440.10 motion. N.Y. Rules of Court, Court of Appeals, § 500.10(a); Soto v. Portuondo, No. 02-CV-28, 2004 WL 2501773, at *2 n.2 (E.D.N.Y. Nov. 5, 2004); Velasquez v. Edwards, No. 00 Civ. 8784, 2002 WL 441335, at *1 n.1 (S.D.N.Y. March 21, 2002). In denying the claim, Justice Bradley noted that it could have been raised on direct appeal and cited C.P.L. § 440.10(2)(b) for the proposition that "the Court must deny a motion such as the defendant's when, at the time of the motion the judgment is pending appeal, and sufficient facts appear on the

record to permit adequate review upon the appeal." In addition, he found that "[o]n the merits, the defendant's motion was also insufficient." (Order dated May 22, 2001, attached as Exh. N to Taylor Decl.).

Justice Bradley's decision leaves the door open to two possible arguments in favor of habeas review. The first is that since the court reached the merits of the 440 claim, it could not have actually decided the claim on state procedural grounds. This argument is easily disposed of. It is well settled that although a court must decide on procedural grounds in order for a claim to be precluded from federal review, "a state court need not fear reaching the merits of a federal claim in an alternative holding." See Harris, 489 U.S. at 264 n.10; see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

The second argument, that Justice Bradley merely laid the factual and legal foundation for a finding of procedural default, but did not "clearly and expressly" decide the petitioner's 440 claims on that ground, is more subtle. It is quite clear that Justice Bradley intended to deny the petitioner's 440 claims on state procedural grounds. However, in Harris the Supreme Court, considering facts very similar to those here, found claims to be reviewable by a federal habeas court where the state court noted in its order that the issues "could have been raised [on] direct appeal", and referred as well to "the 'well-settled' principle of Illinois law that 'those [issues]

which could have been presented [on direct appeal], but were not considered are waived." Harris, 489 U.S. at 258, 266. The Court found that the state court's decision fell short of the explicit reliance required to bar a habeas claim based on a state procedural bar. Id. Likewise, in Jones v. Stinson, the Second Circuit held that a claim was not procedurally barred where the state court set out a factual predicate for denying the claim on state procedural grounds and cited to a case providing legal support for such a dismissal, but also addressed the claim on the merits. 229 F.3d 112, 115 (2d Cir. 2000). Accord Tung v. Fischer, No. 01-CV-3877, 2003 WL 22999662, at *5-6 (E.D.N.Y. Dec. 22, 2003). Nevertheless, in this case, unlike either Harris or Jones, after analyzing the procedural grounds for denying the petitioner's 440 claims, Justice Bradley stated that the claims were "also insufficient" on the merits, which he then discussed. This statement clearly indicates the state court's reliance on a procedural bar; the merits discussion was simply an additional or alternative grounds for dismissal. Accordingly, the petitioner's ineffective assistance of counsel claim is procedurally defaulted.

As for the petitioner's remaining claims,[7] because he failed to raise them either in his direct appeal or his 440 motion, they are

_____

[7] It is unclear whether the petitioner's second claim, alleging insufficient evidence, was at least partly included in his 440 motion or whether he is raising the entire claim for the first time in the instant petition. However, because the claim is procedurally forfeited under either circumstance, that question need not be resolved.

11

unexhausted[8] and the petitioner is barred from returning to state court to exhaust them. This is because New York law provides only one opportunity for direct review. N.Y. Rules of Court, Court of Appeals § 500.10(a); see Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000). Notably, Mr. Roberts did attempt to preserve the claims not raised in his 440 motion by filing a motion to submit a pro se supplemental brief. However, in that motion, Mr. Roberts provided no facts or law in support of his claims beyond general allegations of due process and Sixth Amendment violations. The state court could not possibly have had a fair opportunity to consider these constitutional claims based on such a submission. Picard, 404 U.S. at 275; Daye, 696 F.2d at 190. Therefore, Mr. Roberts did not preserve his due process and Sixth Amendment claims by filing his pro se motion.

---

[8] Prior to seeking federal habeas corpus relief a state inmate must first exhaust all available state remedies. Picard v. Connor, 404 U.S. 270 (1971); Daye v. Attorney General of New York, 696 F.2d 186, 190 (2d Cir. 1982). This means that before filing a habeas petition, the inmate must have allowed the state courts a fair opportunity to consider his federal claims. Picard, 404 U.S. at 275; Daye, 696 F.2d at 190. A claim has been fairly presented to a state court when that court has been apprised of both the factual and legal premises of the claim. "Specifically, [the petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." Daye, 696 F.2d at 191 (citations omitted). Similarly, "the petitioner must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." Id. at 192.

B. Cause for Procedural Default

As discussed above, all of the petitioner's claims have been procedurally forfeited, and they may now be addressed on the merits only if the petitioner can show cause for the default and resulting prejudice.[9] See Harris, 489 U.S. at 262. Although Mr. Roberts has not affirmatively presented any cause for his default, he did submit a coram nobis petition alleging ineffective assistance of appellate counsel based on counsel's failure to raise precisely the same claims raised in this habeas petition. I will therefore construe the petition to allege ineffective assistance of appellate counsel as cause for the petitioner's procedural default.

In order to establish ineffective assistance of counsel, the petitioner must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This standard also applies to assistance of appellate counsel. See McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Lawrence v. Artuz, 91 F. Supp. 2d 528, 539 (E.D.N.Y. 2000).

As to the first prong of the Strickland test, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . [T]he performance inquiry must be

_____

[9] Defaulted claims may also be reviewed where a petitioner makes out a case of "actual innocence." Lee v. Kemna, 534 U.S. 362, 405 (2002). However, the record here does not support such a claim.

13

whether counsel's assistance was reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 688. The "prejudice" prong of the <u>Strickland</u> test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," and that "but for" the claimed errors of counsel, the trial result would have been different. <u>Id.</u> at 687, 694.

Appellate counsel is not obliged to identify every possible error in the record or to "raise every nonfrivolous issue that the defendant requests." <u>Jones v. Barnes</u>, 463 U.S. 745, 754 n.7 (1983). There is a "strong presumption of attorney competence," and the court's standard of review of counsel's performance is "highly deferential." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381, 383 (1986). Moreover, a reviewing court should not second-guess a reasonable, professional judgment made by appellate counsel. <u>See</u> <u>Barnes</u>, 463 U.S. at 754; <u>McKee</u>, 167 F.3d at 106; <u>Mayo</u>, 13 F.3d at 533; <u>Avincola v. Stinson</u>, 60 F. Supp. 2d 133, 148 (S.D.N.Y. 1999).

### 1. Ineffective Assistance of Trial Counsel

The petitioner argues that his appellate counsel was ineffective for failing to raise on appeal a claim that trial counsel was ineffective for not challenging juror Diana Rivera for cause after it came to light that she had withheld information about her employment by the F.B.I. during <u>voir dire</u>.[10] (Affidavit of Gregory Roberts dated

---

[10] This is the only basis on which Mr. Roberts argues that trial counsel was ineffective. To the extent counsel erred in failing to preserve other claims, the petitioner cannot now rely on any such error as cause for procedural default.

September 10, 2001, ¶ 7A; Coram Nobis at 4-7). Because this claim had little chance of success, counsel had no obligation to raise it on appeal.

There are two ostensible grounds on which appellate counsel could have challenged defense counsel's performance: (1) that she worked for law enforcement; and (2) that she lied about it in order to be accepted as a juror.[11] As to the former, there is no authority holding that individuals working in law enforcement should be presumptively precluded from service on a criminal jury. See United States v. Shaoul, 41 F.3d 811, 816 (2d Cir. 1994) (juror could not have been challenged for cause because she was a relative of Assistant United States Attorney not involved in case). Moreover, in this case the trial judge elicited Ms. Rivera's assurance that she could decide the case fairly. See Bainlardi v. S.B.C. Warburg, Inc., No. 97 Civ. 2861, 1998 WL 872487, at *4 (S.D.N.Y. Dec. 14, 1998) (finding no valid challenge for cause where juror expressly affirmed that she was not

---

[11] That the juror's conduct also made it impossible for Mr. Roberts to use a peremptory challenge to remove her from the jury also arguably implicates his rights under the Sixth Amendment and due process clause of the Fourteenth Amendment. Nevertheless, any Sixth Amendment or due process argument based on these facts is without merit. The Supreme Court has rejected the position that "without more, 'the loss of a peremptory challenge constitutes a violation of the [Sixth Amendment] right to an impartial jury.'" United States v. Martinez-Salazar, 528 U.S. 304, 313 (2000)(quoting Ross v. Oklahoma, 487 U.S. 81, 88 (1988)). And, although a system of peremptory challenges may support a due process claim where it is so "skewed towards the prosecution [that] it destroys the balance needed for a fair trial," United States v. Harbin, 250 F.3d 532, 540 (7th Cir. 2001), there is no evidence of such an egregious imbalance here.

biased).

As to the latter, it is ambiguous whether Ms. Rivera actually gave false testimony during voir dire. Her statement that she was a transportation assistant is not necessarily inconsistent with her later statement that she worked in a clerical position at the F.B.I. And, it is possible that she did not identify herself as someone working in law enforcement and did not know persons working in law enforcement because her job was clerical. Moreover, although there were two alternate jurors who could have replaced Ms. Rivera (V.D. Tr. at 102-03), it is possible that defense counsel considered them to be less favorably disposed to the petitioner than Ms. Rivera. In light of this ambiguity, appellate counsel's decision not to pursue this claim was not objectively unreasonable.

## 2. Sufficiency of the Evidence

The petitioner also contends that his appellate attorney was ineffective because counsel did not argue that the prosecution failed to prove that the vials the petitioner sold to Detective Williams contained a narcotic drug. In his coram nobis petition, he asserted three grounds on which appellate counsel could have argued that the proof was inadequate. First, he claims that "it was scientifically impossible for [the expert witness] to have drawn the conclusion that the powder was cocaine . . . because her results were never compared to any known substance to certify the results." (Coram Nobis at 8). Second, he attacks the credentials of the expert witness and maintains that she was not qualified as an expert. (Coram Nobis at 10). And,

finally, he posits that the inconsistency between Detective Williams'
grand jury and trial testimony regarding the color of the vial caps
demonstrates that the drugs were not obtained from him. (Coram Nobis
at 12-15).   Because these arguments are without merit, appellate
counsel was not ineffective for failing to raise them.

There is a "very heavy burden placed upon a defendant challenging
the sufficiency of the evidence underlying his conviction." Bohan v.
Kuhlmann, 234 F. Supp.2d 231, 265 (S.D.N.Y. 2002) (quoting Knapp v.
Leonardo, 46 F.3d 170, 178 (2d Cir. 1995)).   To succeed, the
petitioner must demonstrate that "no rational trier of fact could have
found proof of guilt beyond a reasonable doubt." Jackson v. Virginia,
443 U.S. 307, 317, 329 (1979); see also Quartararo v. Hanslmaier, 186
F.3d 91, 97 (2d Cir. 1999); Knapp, 46 F.2d at 178.  A federal habeas
court reviewing a sufficiency of the evidence claim does not make an
independent determination as to whether the evidence demonstrates
guilt beyond a reasonable doubt.   Jackson, 443 U.S. at 318-19.
Rather, the court must construe the evidence in the light most
favorable to the prosecution and defer to the jury's resolution of any
conflicts in the testimony and its assessment of the witness'
credibility.  Id. at 319; see also Herrera v. Collins, 506 U.S. 390,
402 (1993) (Jackson inquiry asks only whether decision to convict was
rational, not whether it was correct); Bossett v. Walker, 41 F.3d 825,
830 (2d Cir. 1994) (the jury is "exclusively responsible for
determining a witness' credibility").

With respect to the first and second arguments, appellate counsel

could have reasonably decided not to pursue them, since trial counsel had objected neither to Ms. Soriano's expert qualifications nor to the subsequent testimony,[12] and both arguments were therefore unpreserved. See CPL § 470.05(2); Chimelis v. Walker, No. 97-CV-5288, 2000 WL 914719, at *4 (E.D.N.Y. June 27, 2000).

As to Mr. Roberts' argument attacking alleged inconsistencies between Detective Williams' trial and grand jury testimony, it fails because those inconsistencies did not preclude the admission at trial of the officer's testimony,[13] and that testimony, together with the testimony of the field team and Ms. Soriano, adequately supports the petitioner's guilt. The petitioner was convicted of criminal sale of a controlled substance in the third degree. Detective Williams testified that she purchased two vials of cocaine from the petitioner. (Tr. at 53-57). The testimony of the field team reinforced Detective Williams' testimony, and Ms. Soriano confirmed that the substance in the vials was cocaine. (Tr. at 134-37).

In sum, the petitioner has presented no basis to assail the proof presented at trial and thus appellate counsel was not ineffective for failing to challenge it.

---

[12] In fact, the parties stipulated that Ms. Soriano was an expert in the area of chemical analysis. (Tr. at 129-30).

[13] Any inconsistencies in Detective Williams' testimony were for the jury to consider which they had ample opportunity to do. Defense counsel cross-examined Detective Williams regarding the alleged inconsistencies. (Tr. at 98-100). And, during summation, defense counsel used those inconsistencies to argue that the identification of the petitioner was mistaken. (Tr. at 256-75).

### 3. Jury Request for Supplemental Instructions

The petitioner also argues that he was denied effective assistance of appellate counsel because counsel did not argue that he was denied his right to a fair trial by the trial court's failure to respond to a jury note in his presence.[14]

Appellate counsel's decision to forego this argument was reasonable, since trial counsel did not object when he learned that the exhibits had been given to the jurors without his having been first informed[15] and, as a result, any argument on that basis was not preserved. See, e.g., CPL § 470.05(2); Franza v. Stinson, 58 F. Supp. 2d 124, 146 (S.D.N.Y. 1999)(collecting cases).

### 4. Defective Indictment

The petitioner next alleges that his appellate counsel was ineffective because he failed to argue that the indictment was defective in that it did not refer to "Public Health Law Article 33." Like the petitioner's claims regarding the sufficiency of the evidence and the trial court's improper response to the jury note, this claim

---

[14] To the extent that the petitioner alleges that the trial court failed to respond at all to a request from the jury for supplemental instructions (Coram Nobis at 15), that assertion is unsupported by the record.

[15] There were actually no grounds on which trial counsel could have objected. The jury notes were all disclosed to counsel. Although the judge responded to the request for exhibits before informing defense counsel of the request, this was proper given that the parties had stipulated before the jury commenced deliberations that, should the jury request to see any of the exhibits, the evidence could be provided to the jury without convening court. (Tr. at 324).

fails because the underlying claim that appellate counsel declined to pursue is unpreserved. Defense counsel never challenged the sufficiency of the indictment and, therefore, the outcome of the petitioner's direct appeal would not have been different even if appellate counsel had raised this claim.

### 5.  Identification Evidence

Finally, the petitioner contends that appellate counsel was ineffective for failing to argue that the trial court "was in error when it found Detective Rosario's testimony to be credible on the issue of wether [sic] defendant's identification was confirmatory". (Coram Nobis at 22).

Under New York law, courts may deny a suppression hearing if the identification is "confirmatory" because the witness identifying the criminal defendant is an undercover police officer "who observed defendant during a face-to-face drug transaction." Wharton, 74 N.Y.2d at 922-23, 550 N.Y.S.2d at 261; see also Alvarez v. Fischer, 170 F. Supp. 2d 379, 384 (S.D.N.Y. 2001) (decision whether to hold a Wade hearing is within the discretion of the state trial court). Wharton involved an identification by an undercover police officer who observed the defendant while purchasing drugs from him as part of a "buy and bust" operation. Three hours later, the undercover officer identified the petitioner at the local precinct as the person who sold him the drugs. Wharton, 74 N.Y.2d at 922, 550 N.Y.S.2d at 260-61.

The trial judge's ruling here that Detective Williams' identification was confirmatory was not improper. Like the officer in

20

<u>Wharton</u>, Detective Williams observed the petitioner closely during an undercover drug transaction and identified him shortly thereafter. (Tr. at 53-56).[16]  Thus, appellate counsel's decision to forego this claim was not objectively unreasonable.

Accordingly, Mr. Roberts has not established cause for his failure to raise any of the instant claims in the state courts, and they are procedurally forfeited.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Roberts' petition for a writ of habeas corpus be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chamber of the Honorable Deborah Batts, Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

---

[16] In addition, the trial judge's determination that Detective Rosario was credible is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).  In any event, Detective Rosario's credibility was borne out at trial by the testimony of his fellow field team officers.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            July 19, 2005

Copies mailed this date to:

Gregory Roberts
c/o Beth Lee
1735 Madison Avenue, Apt. 8C
New York, New York 10029

Darian B. Taylor, Esq.
Assistant Attorney General
120 Broadway
New York, New York  10271